PRATHER, Justice,
for the Court:
Randy Scribner (Randy) filed an action in Maine, seeking a divorce from his wife, Patsy Scribner vRatsy). The divorce was granted on the grounds of irreconcilable differences. However, Patsy filed an action of her own in Pearl River County Chancery Court, seeking a divorce on the grounds of habitual cruel and inhuman treatment. The chancellor overturned the Maine decree and granted Patsy the divorce she sought, on the requested grounds. From this decision Randy now appeals, citing as error the following:
(1) DOES A LOWER COURT HAVE JURISDICTION TO DECIDE CHILD CUSTODY MATTERS OR TO MAKE'A CHILD CUSTODY DETERMINATION BY INITIAL OR MODIFICATION DECREE IF ANOTHER STATE HAS INITIATED CHILD CUSTODY PROCEEDINGS AND HAS NOT DECLINED TO EXERCISE JURISDICTION UNDER THE UNIFORM CHILD CUSTODY JURISDICTION ACT?
(2) DOES A LOWER COURT HAVE JURISDICTION OF A CUSTODY MATTER IF AT THE TIME OF FILING A *351 PROCEEDING CONCERNING THE CUSTODY OF THE CHILD, THE SAME MATTER WAS PENDING IN A COURT OF ANOTHER STATE EXERCISING JURISDICTION SUBSTANTIALLY CONFORMING WITH THE MISSISSIPPI UNIFORM CHILD CUSTODY JURISDICTION ACT, AND SAID OTHER STATE IS AN APPROPRIATE FORUM FOR THE PROCEEDINGS?
(3) SHOULD THE FINAL DECREE OF DIVORCE OF ANOTHER STATE, VALID IN ALL RESPECTS AND PARTICULARS IN THAT OTHER STATE, BE SET ASIDE OR SHOULD IT BE GIVEN FULL FAITH AND CREDIT WITHIN THE STATE OF MISSISSIPPI?
(4) IS SERVICE OF PROCESS, PERFECTLY VALID IN ANOTHER STATE, BUT INVALID BY A TECHNICALITY WITHIN MISSISSIPPI HAD THE ACTION BEEN COMMENCED HERE, SUFFICIENT GROUNDS TO OVERTURN THE FINAL DECREE OF DIVORCE IN ANOTHER STATE?
(5) CAN A MISSISSIPPI COURT HOLD A RESIDENT OF MAINE IN CONTEMPT FOR NON-PAYMENT OF CHILD SUPPORT WHEN HE IS PAYING THE CHILD SUPPORT DECREED BY A VALID MAINE DIVORCE JUDGMENT?
I.
Randy and Patsy were married in Alabama in 1975. Despite spending most of their married life together in Mississippi, the couple moved to Maine with their son John in September of 1983. Unfortunately, in September of the following year, Patsy separated from her husband and moved back to Pearl River County, Mississippi with John.
Randy filed for divorce in Maine on or about November 26, 1984.[1] On December 28, 1984, Patsy was personally served with process by the Sheriffs department of Pearl River County, at a time when Mississippi statutory rules for service of process were in effect. The return shows service of this process by James Smith, the Sheriff, and by “Margaret Alexander, Deputy Sheriff.” In actuality, Alexander is a secretary in the Sheriffs office. This fact forms the heart of Patsy’s claim.
In any event, Patsy does not challenge the fact that she was actually and personally served with notice; she simply maintains an insufficiency in the service of notice, i.e., that the wrong person served her with process. Patsy also concedes in her brief that she made no appearance of any kind in the Maine divorce action.
On May 21, 1985, the Maine court granted Randy a divorce on the grounds of irreconcilable differences. The Court placed custody of John with Patsy[2] and ordered *352 Randy to pay $120.00 per month in the form of child support, which he has paid.
On May 13,1985, just eight (8) days prior to the finalization of the Maine divorce decree, Patsy filed a divorce complaint of her own in Pearl River County Chancery Court. On May 20, 'only one (1) day before the Maine divorce decree became final, Randy was served with process by certified mail. Surprisingly, Patsy appears to have married one Richard Lenore Smith on or about July 5, 1985, while her own divorce action was still pending. This action on Patsy’s part indicates that she considered her Maine divorce from Randy to be final. Additionally, Patsy continued to accept Randy’s $120.00 child support payments.
The existence of a pending suit involving the custody and support of the minor child was brought to the attention of the trial court as was required under the Uniform Child Custody Jurisdictional Act, Miss.Code Ann. § 93-23-11(3) (Supp.1989). Upon learning of this fact, the trial court required that a verified copy of the proceeding in Maine, certified under the Acts of Congress, be secured before proceeding further in Mississippi. The trial court determined from its examination of the Maine record and upon proof of Ms. Alexander’s status as a secretary that process upon Patsy was improperly served although M.R.C.P. Rule 4(c)(2) was not in effect on December 28, 1984. The Court found also that Alexander was not a person designated as a process server under M.R.C.P. No. 4. The record does not reflect any attempt by the Mississippi Court to communicate with the Maine Court as required by Miss. Code Ann. § 93-23-11(3) (Supp.1989). There is also no indication that the trial judge was aware of Patsy’s remarriage, in reliance upon the Maine decree.
The Mississippi trial judge held the Maine decree void for insufficiency of service of process, and on October 14, 1985, the Pearl River Chancery Court granted Pats> a divorce from Randy. In the decree, the Chancery Court gave Patsy custody of John and ordered Randy to make child support payments in the amount of $300.00 per month.
As its sole basis for overturning the Maine divorce decree, the Mississippi trial court emphasized the “improper” service of process on Patsy. In the chancery court’s opinion, this fact alone rendered the Maine decree invalid. It is nowhere asserted by Patsy that she had no notice of the penden-cy of the divorce action in Maine. “If appellee was personally served with process, and the record shows [s]he was, no mere irregularity in the service of the process, unless so radical as to deprive it of all citatory effect, can be set up against the judgment when brought in question in another state.” Honeywell v. Aaron, 228 Miss. 284, 88 So.2d 558, 559 (1956).
On the 29th day of August, 1986, Randy filed a motion to set aside the' final decree of the Chancery Court of Pearl River County, and on the 15th day of April, 1988, the motion was rejected by the Chancery Court. Randy then perfected his appeal to this Court. This Court is of the opinion that the chancery court erred in reaching its conclusion.
II.
Since Randy’s original divorce action was filed in Maine, the Maine Rules of Civil Procedure govern that case in all pertinent respects. Me.R.C.P. 12(h)(1) reads as follows:[3]
(h) Waiver or Preservation of Certain Defenses
(1) A defense of lack of jurisdiction over the person, improper venue, insufficien *353 cy of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by a motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
(Emphasis added).
As noted earlier, although Patsy received notice of the divorce action initiated in Maine by Randy, she admittedly failed to make any kind of appearance. Therefore, it is logical to assume that she never filed any sort of motion objecting to the sufficiency of process on her, as she was required to do by the language of Me.R.C.P. 12(h)(1). Accordingly, she waived any right to challenge the sufficiency of process on her. Thus the Maine decree became final and binding on the parties.[4] Brown v. Brown, 493 So.2d 961 (Miss.1986); Castleberry v. Castleberry, 541 So.2d 457 (Miss.1989). The lack of in personam jurisdiction is a matter that may be waived if not timely asserted. M.R.C.P. 12(h)(1).
U.S. CONST, art. IV., § 1 states that: “[fjull faith and credit shall be given in each state to the public'acts, records, and judicial proceedings of every other state.” See Reeves Royalty Co., Ltd. v. ANB Pump Truck Service, 513 So.2d 595, 598 (Miss.1987); Interest of K.M.G., 500 So.2d 994, 997 (Miss.1987). Whether a Mississippi Court should defer to the Maine decree is committed to the sound discretion of the Chancery Court. Brown, supra. In light of the fact that a valid and binding final divorce decree existed between Randy and Patsy Scribner,[5] the Chancery Court of Pearl River County abused its discretion in exercising jurisdiction over another divorce between the parties.
It should also be remembered that Patsy remarried soon after the Maine divorce decree became final, indicating her reliance on its validity. Due to her subsequent remarriage, Patsy is estopped from asserting the invalidity of the Maine decree. Garland v. Lewis, 547 So.2d 1030, 1031 (Fla.App.1989); Arnold v. Arnold, 500 So.2d 739, 740 (Fla.App.1987); Sandifer v. Sandifer, 389 So.2d 767, 772 (La.App.1980).
The Chancery Court of Pearl River County improperly overturned the earlier divorce decree from Maine. This Court reverses the trial court, and the provisions of the Maine divorce decree shall once again be given full force and effect.
III.
The finding of the Pearl River Chancery Court that Randy Scribner was in arrears in child support payments based upon the now reversed Mississippi decree, together with a finding of civil contempt, is reversed and rendered. Since Randy Scribner submitted himself to the jurisdiction of the Mississippi Court by pleading and personal appearance, seeking in the alternative a modification of the Mississippi award for child support, this Court remands the issue of future child support to the Pearl River Chancery Court upon pleadings to be filed by either party.
REVERSED AND RENDERED; REMANDED FOR MODIFICATION OF FUTURE SUPPORT ISSUE.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.

. Although not raised by either party as an issue, the Maine District Court clearly had subject matter jurisdiction over the divorce proceedings, pursuant to ME.REV.STAT.ANN. tit. 19, § 691 (1981) (1981), which reads in pertinent part as follows:
2. JURISDICTION. The Superior Court or the District Court shall have jurisdiction of an action for divorce if:
A. The plaintiff has resided in good faith in this State for 6 months prior to the commencement of the action; ...
It is clear from the record that Randy and Patsy lived in Maine for approximately one (1) year before they separated.

. Randy has never challenged the custody portion of either the Maine or Mississippi decrees, nor has Patsy. Although not necessary for this Court to reach a decision in this case, it is worth noting that under the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), both the states of Maine and Mississippi would have had jurisdiction over any custody matters pertaining to the couple’s son, John.
In Maine, jurisdiction would have been proper under ME.REV.STAT.ANN. tit. 19 § 804 (1981), which reads as follows:
1. Grounds for jurisdiction. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
A. This State ... has been the child’s home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or. person acting as parent continues to live in this state....
The Scribners lived in Maine as a family until September, 1984 and Randy initiated the Maine divorce proceeding on November 26, 1984, meáning only three (3) months had passed.
*352 Jurisdiction in this state would likewise have been proper pursuant to § 93-23-5, Miss.Code Ann. (Supp.1989), which reads as follows: (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding. ...
John Scribner had been living for nine months with his mother in Mississippi when she initiated her divorce proceeding in Pearl River County.

. The language of Me.R.C.P. 12(h)(1) and M.R. C.P. 12(h)(1) are identical.

. Unless, of course, she later sought a modification of the terms of the divorce decree, specifically those portions pertaining to custody of the child and the amount of child support.

. A decree which Patsy had the opportunity to object to, via Me.R.C.P. 12(h)(1), yet declined to do.