821 So.2d 874 (2002)
Dora Jean KOLIKAS, Appellant,
v.
James Richard KOLIKAS, Appellee.
No. 2000-CA-01615-COA.
Court of Appeals of Mississippi.
April 16, 2002.
Rehearing Denied July 16, 2002.
*875 Pat Donald, Madison, attorney for appellant.
Ronald Louis Taylor, Southaven, attorney for appellee.
Before KING, P.J., THOMAS, and MYERS, JJ.
KING, P.J., for the court.
¶ 1. On May 7, 1998, James Richard Kolikas obtained a decree of divorce from Dora Jean Kolikas in Marshall County, Mississippi. On January 8, 1999, Ms. Kolikas obtained a decree of divorce from Mr. Kolikas in North Carolina. Ms. Kolikas has appealed the order of the Marshall County Chancery Court which held that the divorce obtained by Mr. Kolikas in Mississippi was valid and the North Carolina decree was not entitled to full faith and credit, and asserts the following issues, which we quote verbatim from her *876 brief: "(1) Did the trial court commit reversible error in holding that the judgment of divorce entered by the Chancery Court of Marshall County, Mississippi is valid and binding on Dora Jean Kolikas, even though the judgment was obtained without any process ever being served upon Dora Jean Kolikas, either personally or by publication? (2) Did the trial court commit reversible error in holding that the North Carolina divorce judgment was not entitled to full faith in the State of Mississippi, and by failing to decree the registration of such North Carolina divorce judgment?"

FACTS
¶ 2. Dora Jean Kolikas and James Richard Kolikas were married on March 26, 1971, in Fairfax, Virginia. The parties had one child, James Kolikas, born January 6, 1973, who is now an adult. In 1992, the parties resided in Wilmington, North Carolina. In July 1997, the parties separated. Mr. Kolikas left the marital home in North Carolina and moved to Byhalia, Mississippi.
¶ 3. On February 20, 1998, Mr. Kolikas filed a complaint for divorce in the Chancery Court of Marshall County, Mississippi on the grounds of habitual cruel and inhuman treatment, and alternatively, irreconcilable differences. In the complaint, Mr. Kolikas asserted that Ms. Kolikas was a non-resident of Mississippi who resided at 7308 Chase Lane, Wilmington, North Carolina 28405. Mr. Kolikas published a summons to Ms. Kolikas in a Marshall County newspaper, but provided no further notice to her.
¶ 4. In March 1998, Mr. Kolikas signed an authorization to disburse to Ms. Kolikas the proceeds from the sale of their North Carolina home.
¶ 5. On April 6, 1998, Ms. Kolikas filed a complaint for divorce in the General Court of Justice District Court Division of New Hanover County, North Carolina. Mr. Kolikas took no action to defend the case in North Carolina.
¶ 6. On May 7, 1998, Mr. Kolikas was granted a divorce in the Chancery Court of Marshall County, Mississippi. Mr. Kolikas testified that a copy of the divorce decree was faxed to Ms. Kolikas' attorney the following day. Mr. Kolikas stated that he mailed a copy of the divorce decree to Ms. Kolikas. Ms. Kolikas immediately responded by sending the document back saying "it wasn't worth the paper it was written on."
¶ 7. On May 11, 1998, the North Carolina court ordered Mr. Kolikas to pay $2,644 per month as post-separation support and attorney's fees in the amount of $360. A copy of this order is listed on the sheriff's return of service as having been served on Mr. Kolikas on May 18, 1998.
¶ 8. On July 18, 1998, Mr. Kolikas married Reba (his first wife). Ms. Kolikas sent a card to the couple acknowledging their re-marriage.
¶ 9. In August 1998, a contempt order and order for the arrest of Mr. Kolikas was entered for failure to pay the amounts ordered by the North Carolina court. The sheriffs return attached to this document listed it as having been served on Mr. Kolikas on June 30, 1998.
¶ 10. On January 8, 1999, Ms. Kolikas was granted a judgment of divorce in North Carolina. Under the North Carolina judgment, Mr. Kolikas was ordered to pay Ms. Kolikas $2,000 per month as permanent alimony to begin on February 1, 1999 and $500 in attorney's fees.
¶ 11. On December 7, 1999, Ms. Kolikas filed a petition with the Marshall County Chancery Court for registration of a foreign decree. On December 23, 1999, Mr. Kolikas filed his response to the petition *877 and filed a motion for relief from judgment pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure. On January 10, 2000, Ms. Kolikas responded to this motion. The chancellor heard testimony on those matters in February of 2000. At the close of the hearing, the chancellor requested that both parties submit briefs to the court for further review of the matter.
¶ 12. After receipt of the additional briefs on June 16, 2000, the chancellor sustained Ms. Kolikas' petition for registration of a foreign order, after which Mr. Kolikas filed a motion to alter or amend findings of fact and a motion for stay on June 26, 2000. On July 5, 2000, Mr. Kolikas supplemented this petition with an affidavit by Tracy Russell (Ms. Kolikas' natural daughter) which stated that Ms. Kolikas was informed of the pending divorce proceeding in Mississippi. That as a result of that knowledge, she had requested that Mr. Kolikas insure that her maiden name was restored. On July 10, 2000, Ms. Kolikas moved to strike the affidavit as improper and for failure to file within ten days of judgment pursuant to M.R.C.P. 59(e).
¶ 13. The chancellor heard the various motions on August 11, 2000, and on August 22, 2000, entered an order which set aside the court's prior order dated June 16, 2000, sustaining the petition for registration of a foreign decree, and found that Ms. Kolikas was estoppel from questioning the validity of the Mississippi divorce. The chancellor denied Ms. Kolikas' motion for relief from judgment pursuant to M.R.C.P. 60(b), and the motion to strike the affidavit of Tracy Russell. The order declined to give full faith and credit to the North Carolina decree, and relieved Mr. Kolikas of the burden of complying with the North Carolina divorce decree.

ISSUES AND ANALYSIS

STANDARD OF REVIEW
¶ 14. In reviewing a domestic relations case, a chancellor's factual findings will not be disturbed unless the court's actions were manifestly wrong, the court abused its discretion, or applied an erroneous legal standard. Wright v. Wright, 737 So.2d 408(¶ 5) (Miss.Ct.App. 1998). For questions of law, our standard of review is de novo. McCubbin v. Seay, 749 So.2d 1127(¶ 5) (Miss.Ct.App.1999).

I.

Did the trial court commit reversible error in holding that the judgment of divorce entered by the Chancery Court of Marshall County, Mississippi is valid and binding on Dora Jean Kolikas, even though the judgment was obtained without any process ever being served upon Dora Jean Kolikas, either personally or by publication?
¶ 15. Ms. Kolikas contends that the chancery court committed reversible error by holding that the divorce judgment in Mississippi was valid and binding on her even though it was obtained without proper service of process. Ms. Kolikas was a non-resident of Mississippi, upon whom service of process was attempted pursuant to Rule 4(c)(3)(A) & (C) of the Mississippi Rules of Civil Procedure. Rule 4(c)(3)(A) & (C) of the Mississippi Rules of Civil Procedure requires the following:
(A) If the defendant in any proceeding in a chancery court, or in any proceeding in any other court where process by publication is authorized, by statute, be shown by sworn complaint or sworn petition, or by a filed affidavit, to be a nonresident of this state or not to be found therein on diligent inquiry and the post office address of such defendant be stated in the complaint, petition, or affidavit, *878 or if it be stated in such sworn complaint or petition that the post office address of the defendant is not known to the plaintiff or petitioner after diligent inquiry, or if the affidavit be made by another for the plaintiff or petitioner, that such post office address is unknown to the affiant after diligent inquiry and he believes it is unknown to the plaintiff or petitioner after diligent inquiry by the plaintiff or petitioner, the clerk, upon filing the complaint or petition, account or other commencement of a proceeding, shall promptly prepare and publish a summons to the defendant to appear and defend the suit. The summons shall be substantially in the form set forth in Form 1-C.
(C) It shall be the duty of the clerk to hand the summons to the plaintiff or petitioner to be published, or, at his request, and at his expense, to hand it to the publisher of the proper newspaper for publication. Where the post office address of the absent defendant is stated, it shall be the duty of the clerk to send by mail (first class mail, postage prepaid) to the address of the defendant, at his post office, a copy of the summons and complaint and to note the fact of issuing the same and mailing the copy, on the general docket, and this shall be the evidence of the summons having been mailed to the defendant. (emphasis added)
¶ 16. The rules on service of process are to be strictly construed. Birindelli v. Egelston, 404 So.2d 322, 323-24 (Miss.1981). If they have not been complied with, the court is without jurisdiction unless the defendant appears of his own volition. American Cable Corp. v. Trilogy Communications, Inc., 754 So.2d 545(¶ 7) (Miss.Ct.App.2000).
¶ 17. If a defendant does not voluntarily appear to a cause against him, he cannot be gotten into court except in the manner laid down by law. He is under no obligation to notice what is going on in a cause in court against him, unless the court has gotten jurisdiction of him in some manner recognized by law. Burns v. Burns, 133 Miss. 485, 491, 97 So. 814, 815 (1923). Mr. Kolikas published a summons by publication in Mississippi, but neither he nor the chancery clerk attempted to provide Ms. Kolikas any further notice of the complaint for divorce. Mr. Kolikas listed Ms. Kolikas' physical address in his complaint. He contends that, because he listed her address in the complaint, he complied with the requirements of the above mentioned rules.
¶ 18. The chancellor properly determined that service of process had not been effected under Rule 4(c)(3)(A) & (C). While finding a lack of process, the chancellor, in reliance on Scribner v. Scribner, 556 So.2d 350 (Miss.1990), held that Ms. Kolikas was estopped from challenging the court's jurisdiction.
¶ 19. The chancellor's reliance on Scribner was misplaced. While it is true that the Mississippi Supreme Court estopped Patsy Scribner from contesting the issue of jurisdiction, it did so because she had taken an affirmative action in reliance on the validity of the divorce decree. That affirmative action was to get married. Scribner, 556 So.2d at 353.
¶ 20. There is nothing in the record before this Court which shows any affirmative action taken by Ms. Kolikas in reliance on the validity of the Mississippi divorce. This reason is therefore an insufficient basis upon which to estop her from contesting jurisdiction.
¶ 21. Likewise, there is nothing in the record which suggests that Ms. Kolikas caused Mr. Kolikas to rely on the Mississippi divorce to his detriment. Mr. Kolikas *879 was the moving force behind the Mississippi divorce and was accordingly responsible for its proper prosecution.
¶ 22. The record does reflect that, upon receipt of a copy of the divorce decree, Ms. Kolikas immediately expressed to Mr. Kolikas her belief that the Mississippi decree was invalid.
¶ 23. Estoppel requires that the party to be estopped (1) have acted affirmatively in reliance on the validity of the decree, and (2) to have caused the other party to detrimentally rely upon the validity of the decree. Kelly v. Shoemake, 460 So.2d 811, 823 (Miss.1984). Neither of those things is present in this case.
¶ 24. The dissent suggests that Mr. Kolikas' bigamous marriage is the fault of Ms. Kolikas and should therefore preclude her attack upon the validity of the Mississippi decree. Such a suggestion has no basis in fact or reason. Mr. Kolikas, in consultation with his attorney, chose what actions to take in pursuit of a divorce. As such, it was his obligation, not that of Ms. Kolikas, to ensure that his actions complied with the appropriate statutes and court rules. He did not do so, and cannot place the blame for this failure upon Ms. Kolikas.
¶ 25. Nor has Mr. Kolikas presented substantial credible evidence that Ms. Kolikas benefitted in reliance upon the divorce decree.
¶ 26. There is some suggestion that Ms. Kolikas obtained property as a result of the Mississippi decree. However, nowhere in the Mississippi decree does it specifically identify any property to be received by Ms. Kolikas as a result of the Mississippi decree, nor is there any written documentation of any benefit agreed to in anticipation of divorce.
¶ 27. The lack of written documentation of benefits agreed to in anticipation of divorce cannot be discounted. One of the grounds for divorce cited by Mr. Kolikas was irreconcilable differences, pursuant to § 93-5-2 of the Mississippi Code Annotated (Rev.1994). There are several requirements of § 93-5-2 which touch upon the suggestion of an agreed benefit accruing to Ms. Kolikas as a result of the divorce.
¶ 28. First, § 93-5-2 requires personal service or a written waiver of process.
¶ 29. Second, it requires that the parties execute a written agreement as to property division, or in its absence, they by written agreement consent to a division of property by the court.
¶ 30. There is nothing in the record to document the existence of any of these required written agreements. At all times Mr. Kolikas was represented by counsel. There is no reason to believe that Mr. Kolikas' counsel was unaware of the requirement for a written property division agreement.
¶ 31. The failure to obtain such an agreement, would tend to belie the suggestion that there was an agreed division of property in anticipation of divorce, and render infirm, the suggested basis for estoppel.
¶ 32. Proper service upon a non-resident defendant requires that notice be published and, a copy of the summons and complaint mailed to the defendant's last known address. While there was publication there was no mailing. Process is not complete until a copy has been mailed. Williams v. Kilgore, 618 So.2d 51, 56 (Miss.1992). The chancery court had not acquired personal jurisdiction over Ms. Kolikas due to lack of proper service of process based on the Mississippi Rules of Civil Procedure previously mentioned. Accordingly, we reverse and remand this case to the Marshall County Chancery *880 Court for further proceedings consistent with this holding.

II.

Did the trial court commit reversible error in holding that the North Carolina divorce judgment was not entitled to full faith in the State of Mississippi, and by failing to decree the registration of such North Carolina divorce judgment?
¶ 33. Ms. Kolikas contends that the chancery court committed reversible error by holding that the North Carolina divorce judgment was not entitled to full faith and credit in Mississippi and by failing to decree the registration of the North Carolina divorce judgment. In the court's order on rehearing denying petition for registration of foreign order, the chancellor determined that:
"[T]he evidence shows that Dora Jean was certainly aware of the divorce proceedings in Mississippi and even relied upon them to obtain the proceeds from the sale of the couple's home as well as all other property in North Carolina. Therefore, based on the case of Scribner v. Scribner, 556 So.2d 350 (Miss.1990), Dora is estopped from asserting that the Mississippi Divorce Decree is invalid since she relied upon it ... [T]his Court must find that Dora, having relied upon the Mississippi divorce decree to obtain North Carolina marital property and the restoration of her maiden name, is estopped to deny the validity of the Mississippi Divorce Decree."
The chancellor further determined that the North Carolina court was not advised about the Mississippi divorce decree nor the fact that Ms. Kolikas had received in excess of $19,000 from the sale of the North Carolina marital property prior to entering its orders and judgments. The chancellor found that "the North Carolina orders and judgment for post separation support and alimony were based on, at best, incomplete representations to the North Carolina court and thus are not entitled to full faith and credit in the State of Mississippi...."
¶ 34. Article IV, § 1 of the United States Constitution requires that full faith and credit be given to the judicial proceedings of sister states. However, those proceedings are only entitled to full faith and credit where the rendering court properly has subject matter and personal jurisdiction. Cappaert v. Walker, Bordelon, Hamlin, Theriot and Hardy, 680 So.2d 831, 834 (Miss.1996).
¶ 35. Mr. Kolikas raised the issue of lack of jurisdiction by the North Carolina court. The chancellor did not address this issue, finding it by inference to be unnecessary. However, our disposition of this case requires that a determination be made as to the existence of proper jurisdiction by the North Carolina court.
¶ 36. There is evidence in the record that Ms. Kolikas attempted to have Mr. Kolikas served with the complaint and summons for the North Carolina divorce action. The summons with attached complaint was issued on April 14, 1998, and sent to the Marshall County Sheriffs Department by Ms. Kolikas' attorney with a request that it be served upon Mr. Kolikas. It appears that Ms. Kolikas may have attempted service pursuant to North Carolina Rule of Civil Procedure 4(j)(1)(a), which provides:
(j) ProcessManner of Service to Exercise Personal Jurisdiction. In any action commenced in a court of this State having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in G.S. 1-75.4, the manner of service of process within or without the State shall be as follows:

*881 (1) Natural Person. Except as provided in subsection (2) below, upon a natural person by one of the following:
(a) By delivering a copy of the summons and of the complaint to him or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.
¶ 37. The testimony regarding service of process is murky. Marshall County Deputy Sheriff Walter Bell, whose signature appears upon the proof of service, indicated he was unable to say that he had served notice of the North Carolina divorce proceedings upon Mr. Kolikas. He indicated that it was possible he might have given the documents to someone other than Mr. Kolikas.
¶ 38. Mr. Kolikas testified that his job kept him away from home, and Deputy Bell had not served him with notice of the North Carolina divorce. He did acknowledge that Deputy Bell had arrested him suggesting this to be his only official contact with Deputy Bell.
¶ 39. Mr. Kolikas' grandson testified that while visiting the home one day when his grandparents were away, he was served some papers by the Marshall County Sheriff's office for Mr. Kolikas, his grandfather. While uncertain as to the year, he recalls that it was in the spring of the year, which is when the North Carolina divorce papers were supposedly served. He also noted that these papers were not given to Mr. Kolikas.
¶ 40. If in fact the summons and complaint were served upon the grandson, process was improper because North Carolina Rules of Civil Procedure allow process to be left with a resident of the home, but not a visitor.
¶ 41. Because this Court finds that the Chancery Court of Marshall County lacked sufficient process to grant Mr. Kolikas' divorce and the issue of the jurisdiction of the North Carolina court was not addressed, it deems it appropriate to reverse and remand this issue.
¶ 42. Upon remand, Mr. Kolikas can have the opportunity to attain proper service upon Ms. Kolikas, or if necessary, establish the lack of jurisdiction of the North Carolina court.
¶ 43. THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS REVERSED AND REMANDED FOR SUCH FURTHER PROCEEDINGS AS ARE CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
BRIDGES, THOMAS, LEE, IRVING, AND MYERS, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., AND BRANTLEY, J. McMILLIN, C.J., NOT PARTICIPATING.
CHANDLER, J., Dissenting:
¶ 44. The majority would reverse and remand this case for further findings to determine the validity of both the Mississippi and the North Carolina divorce. Because I believe that the chancellor was correct in his ruling that the Mississippi divorce decree was valid pursuant to Scribner v. Scribner, 556 So.2d 350 (Miss.1990) and that the North Carolina divorce decree should not be granted full faith and credit, I respectfully dissent.
¶ 45. After a hearing on the matter and reference to Scribner, the chancellor found that the Mississippi divorce decree was valid despite the lack of proper service of process. In Scribner, the husband, Randy, *882 filed an action in Maine seeking a divorce from his wife, Patsy. Scribner, 556 So.2d at 350. Eight days prior to the finalization of the Maine divorce decree, Patsy filed a divorce complaint in Pearl River County, Mississippi. Id. at 352. Patsy remarried while the Mississippi divorce decree was pending. Id. She also accepted the child support payments ordered by the Maine court pending determination of Randy's divorce complaint. Id.
¶ 46. Patsy attacked the Maine decree on the basis of insufficiency of process. Id. She argued that process was insufficient because she was served by a person not qualified as a process server under M.R.C.P. 4. Id. The Mississippi trial judge held that the Maine decree was void for insufficiency of process; however, there is no indication that the trial judge was aware of Patsy's remarriage. Id.
¶ 47. The Mississippi Supreme Court reversed and rendered holding that Patsy was estopped from attacking the validity of the Maine divorce decree. Id. at 353. The court noted that Patsy had relied upon the divorce to her benefit; she remarried. Id. The court also stated that Patsy had notice of the pendency of the divorce and failed to make any kind of appearance. Accordingly, she waived the right to challenge the sufficiency of process pursuant to M.R.C.P. 12(h)(1). Id.
¶ 48. As noted by the majority, the chancellor found that Ms. Kolikas was estopped from attacking the Mississippi divorce decree because she had notice of the proceedings and relied upon the divorce to her benefit; however, the majority finds that this holding was erroneous because the elements of estoppel had not been met. I disagree.
¶ 49. At trial Ms. Kolikas testified that she had no notice of the Mississippi divorce until the final decree was received by her attorney, approximately one month after she filed the North Carolina action. However, Ms. Kolikas also testified that she sent a card to congratulate her husband on his remarriage to his current wife. Mr. Kolikas remarried in July of 1998; the North Carolina divorce decree was not final until January 8, 1999. It is incredible that Ms. Kolikas would congratulate her husband on a bigamous marriage.
¶ 50. There was further testimony at trial that Ms. Kolikas was aware of the divorce proceedings. Her grandson and her daughter both testified that she informed them that she was to receive the North Carolina property from Mr. Kolikas. There was also testimony that she told Mr. Kolikas that she wanted her maiden name restored. Mr. Kolikas testified that his decision to release the proceeds from the sale of the marital home to Ms. Kolikas was pursuant to an agreement concerning the division of the marital property for purposes of the divorce. Mr. Kolikas also remarried in reliance upon the Mississippi divorce decree.
¶ 51. Based upon this testimony, the chancellor determined that Ms. Kolikas had knowledge of the Mississippi divorce proceedings and relied upon the divorce to her benefit. The chancellor was in the best position to resolve disputes in testimony. As the trier of fact, it was the chancellor's province to resolve questions of credibility. Scally v. Scally, 802 So.2d 128(¶ 16) (Miss.Ct.App.2001). Where that resolution is supported by substantial credible evidence, this Court is obligated to defer to these findings. Id. The record of this case reveals the existence of substantial credible evidence in support of the chancellor's ruling.
¶ 52. Mississippi follows the Restatement (Second) of the Conflict of Laws in deciding the appropriate state law to apply in conflicts issues. Newman v. Newman, *883 558 So.2d 821, 823 (Miss.1990). Restatement Second Conflict of Laws § 74 (1969) states, "[a] person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so." This principle has been widely followed in other jurisdictions. See Horn's Crane Serv. v. Prior, 182 Neb. 94, 152 N.W.2d 421, 425 (1967); Bruneau v. Bruneau, 3 Conn.App. 453, 489 A.2d 1049, 1052 (1985);. In re Marriage of Lockwood, 857 P.2d 557, 561 (Colo.Ct.App.1993). In the case sub judice, where Ms. Kolikas knew of the pendency of the Mississippi divorce and accepted the benefits thereof, the above stated principle prevents her from now attacking that decree.
¶ 53. As to the validity of the North Carolina divorce, I would find that the chancellor properly held that it was not entitled to full faith and credit. Our courts must give full faith and credit to the final judgments of all other states and the federal courts under Article 4, Section 1 of the United States Constitution, in which the court of that state had lawful authority to enter the judgment. Reeves Royalty Co., Ltd. v. ANB Pump Truck Serv., 513 So.2d 595, 598 (Miss.1987). That is, if the court had the authority to hear the subject matter embraced by the case, and had lawful process upon the defendant, i.e., process comporting with the requirements of that state's laws and the United States Constitution, the judgment is entitled to enforcement in this state. Id. One qualification to this rule is that if the foreign judgment itself was obtained as a result of some false representation without which the judgment would not have been rendered, and of such nature that the court of that state would relieve the judgment debtor from its effect, a court of this state may refuse to enforce it. Id.
¶ 54. Ms. Kolikas testified at trial that she did not inform the North Carolina court that there was a final divorce decree in Mississippi or that she had received money and other property from the division of the marital property pursuant to the Mississippi divorce. Because she withheld this information, the North Carolina court was without jurisdiction.
SOUTHWICK, P.J., AND BRANTLEY, J., JOIN THIS SEPARATE WRITTEN OPINION.