**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2014-CA-00526-COA**

**WILLIAM LANE**                                                                                                    **APPELLANT**

**v.**

**STELLA B. LANE**                                                                                                  **APPELLEE**

DATE OF JUDGMENT:                    02/06/2014
TRIAL JUDGE:                               HON. DAN H. FAIRLY
COURT FROM WHICH APPEALED:    RANKIN COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        JOHN R. REEVES
                                               JOHN JUSTIN KING
ATTORNEY FOR APPELLEE:            SHARON PATTERSON THIBODEAUX
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:          GRANTED FULL FAITH AND CREDIT TO
                                               TEXAS DIVORCE DECREE AND
                                               ENFORCED SEPARATE-MAINTENANCE
                                               ORDER
DISPOSITION:                              AFFIRMED: 12/01/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     William Lane sought termination of a Mississippi separate-maintenance order after

he divorced his wife, Stella, in Texas.  The Rankin County Chancery Court granted full faith

and credit to the Texas divorce decree (which had itself accorded full faith and credit to the

Mississippi separate-maintenance judgment) and enforced the terms of its prior separate-

maintenance judgment.  Finding no error, we affirm.

**FACTS**

¶2.   William and Stella married in 1982 and had one child together. They separated in 2005. On October 18, 2006, the chancery court, after a trial, entered a judgment for separate maintenance requiring William to pay Stella 55% of the net proceeds upon sale of the marital residence, 75% of Stella's and the child's out-of-pocket medical and dental expenses, a portion of Stella's and their child's car notes and insurance, and $500 per month for Stella's living expenses. That judgment was not appealed.

¶3.   William moved to Texas, and at his instance the parties were divorced in Texas on August 28, 2013. The divorce decree included the following language: "The Court finds that the parties entered into a Judgment for Separate Maintenance . . . attached as Exhibit A to this Decree. It is not the intent or purpose of this decree, nor shall it be construed or interpreted to alter, change, limit, diminish, or cancel any provisions of said judgment." On November 12, 2013, William filed a complaint requesting that the chancery court dismiss his separate-maintenance obligations based on the parties' Texas divorce judgment. Stella counterclaimed for contempt and enforcement of the separate-maintenance order.

¶4.   The chancery court ruled in favor of Stella, entering a judgment granting full faith and credit to the Texas divorce decree and enforcing the judgment of separate maintenance. William appeals.

**STANDARD OF REVIEW**

¶5.   "This Court will not disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, [or was] clearly

2

erroneous, or an erroneous legal standard was applied." *Chapel v. Chapel*, 876 So. 2d 290, 292 (¶8) (Miss. 2004) (citation omitted).

## DISCUSSION

¶6.    The only issue on appeal is whether William can use a foreign divorce decree to *terminate* (not modify)[1] a Mississippi separate-maintenance judgment after signing an agreement to the contrary.  We find that he cannot for two reasons: (1) Stella's separate maintenance and matters of marital property and marital debt remain within the jurisdiction of the chancery court; and (2) the solemn agreement of the parties in the Texas proceedings, as recognized and adopted by the Texas trial court in a decree signed by both parties as to form and substance, is contractual in nature, and enforceable for that reason as well. Provisions set out in the separate-maintenance judgment remain subject to judicial enforcement by the chancery court through its grant of full faith and credit to the Texas judgment and through both courts' recognition of jurisdiction over different aspects of the parties' relationship as citizens of different states.

### 1. Jurisdiction of the Mississippi Court

¶7.    William argues that the chancellor erred when he declined to terminate the separate-maintenance obligation as a matter of law based on the entry of the Texas divorce decree. "Article IV, § 1 of the United States Constitution requires that full faith and credit be given

---

[1] A divorce can be a material change in circumstances warranting modification of a prior separate-maintenance order. *Landrum v. Landrum*, 498 So. 2d 1229, 1230 (Miss. 1986) (citation omitted).

3

to the judicial proceedings of sister states." *Lofton v. Lofton*, 924 So. 2d 596, 599 (¶15) (Miss. Ct. App. 2006) (quoting *Kolikas v. Kolikas*, 821 So. 2d 874, 880 (¶34) (Miss. Ct. App. 2002)). "However, those proceedings are only entitled to full faith and credit where the rendering court properly has subject matter and personal jurisdiction." *Id.*

¶8.     "[A] divorce action involving one resident party and one foreign party may or may not be able to adjudicate personal rights, though it can sever a marriage as long as at least one party is a resident of that state." *Id*. at 601 (¶27). William personally appeared before the Texas court. At the time the suit was filed, he had been a domiciliary of Texas for six months. Stella entered a general appearance through local counsel, ultimately signing the divorce decree along with William as to "form and substance." The divorce decree specifically did not litigate the issues of support and property division. In fact, the decree declined jurisdiction over all but the divorce itself, deferring to the chancery court and its separate-maintenance judgment for "all issues involving the division of the property and debt of the parties."

¶9.     In *Weiss v. Weiss*, 579 So. 2d 539, 540-41 (Miss. 1991), the Mississippi Supreme Court reaffirmed that Mississippi law allows for separate litigation of divorce and alimony. Thomas and Barbara Weiss married in Mississippi. *Id*. at 540. Thomas later moved to Louisiana and filed for divorce. *Id*. That same year, Barbara filed a request for separate maintenance in Mississippi. *Id*. The Louisiana court granted the divorce but reserved the

issue of alimony for the Mississippi court.[2] *Id.* Our supreme court held that the Mississippi court had jurisdiction to determine alimony because the parties' foreign divorce decree did not litigate the issue of alimony. *Id.* at 541.

¶10.     The supreme court dealt with a similar issue in *Chapel.* In that case, the Jackson County Chancery Court awarded Grace Chapel separate maintenance in 1996. *Id.* at 292 (¶5). Mr. Chapel was granted a divorce in Virginia in 1997. *Chapel*, 876 So. 2d at 292 (¶6). The Mississippi chancellor modified the separate-maintenance agreement in 1998 and 2001. *Id.* at 294 (¶13). Grace argued that the chancellor lacked subject-matter jurisdiction because the Virginia divorce decree terminated the original separate-maintenance agreement. *Id.* at 293 (¶10). The supreme court held that "the . . . chancery court continues to have jurisdiction in what originally was the separate-maintenance case, but which converted to one for alimony and other claims compatible with divorce actions[] after the date of the foreign divorce." *Id.* at 295 (¶15).[3] In her treatise, *Bell on Mississippi Family Law* (2d Edition 2011), Professor Deborah Bell refers to this as a "recharacterization" of separate maintenance

---

[2] Barbara's claim for separate maintenance was no longer proper since a divorce had been granted but was convertible to a claim for alimony. *Weiss*, 579 So. 2d at 541. Separate maintenance and alimony may both result in payments for a short period of time or an extended period of time (the period of time for separate maintenance is more uncertain). *Id.* at 542.

[3] The supreme court also stated that because "neither party . . . made formal objections to the chancellor's authority to modify the original separate-maintenance judgment after the Virginia divorce was granted, it is not necessary for the Court to reach the issue of whether . . . a foreign divorce decree[] terminates a domestic court's order of separate maintenance." *Chapel*, 876 So. 2d at 294 (¶11).

as alimony.

¶11.    Like the divorce decree in *Weiss*, the Texas divorce decree in the present case expressly reserved Stella's rights to enforce the separate-maintenance order.  And, similar to the wife in *Chapel*, Stella was awarded separate maintenance prior to the entry of a foreign divorce decree, and the foreign decree did not address the issue of separate maintenance.  We do not find, like the dissent, that Stella's failure to expressly petition for alimony prohibits the chancellor's sua sponte "recharacterization" of separate maintenance as alimony.  As stated in *Weiss*, **"'[a]limony' and 'maintenance' are merely different words used in differing situations to describe the same thing.**"  579 So. 2d at 541 (citation and quotation omitted) (emphasis added).  Mississippi law clearly provides that the chancery court retained jurisdiction over William and Stella's separate-maintenance agreement, as acknowledged by the Texas court with the consent and agreement of the parties.

## 2.  Contractual Nature of the Texas Divorce Decree

¶12.    "[A] decree for separate maintenance may be modified upon a petition presented because of a material or substantial change of circumstances[, such as divorce,] arising subsequent to the date of the decree."  *Landrum v. Landrum*, 498 So. 2d 1229, 1230 (Miss. 1986) (citation omitted).  William did not seek modification of the separate-maintenance order.  Instead, he claimed that the divorce decree *automatically terminated* the order.  However, the Texas divorce decree contained the following provision:

> *Agreement of the Parties*

6

The [c]ourt finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The [c]ourt approves the agreement of the parties as contained in this [f]inal [d]ecree of [d]ivorce.

The [c]ourt finds that the parties entered into a [j]udgment for [s]eparate [m]aintenance on or about September 1, 2006, in the Chancery Court of Rankin County, Mississippi, in case number 57913 . . . It is not the intent or purpose of this decree, nor shall it be construed or interpreted to alter, change, limit, diminish, or cancel any provision of said judgment. This [d]ecree is being entered separate and apart from that judgment.

¶13. In *In re Kennington's Estate*, 206 So. 2d 337, 338 (Miss. 1968), our supreme court held that spouses can contract to payment terms deviating from the traditional concepts of spousal support (providing for alimony to continue after the former husband's death and to be paid by his estate based on his former wife's life expectancy). Ten years later, the supreme court went even further in *Burnett v. Burnett*, 362 So. 2d 828, 830 (Miss. 1978), finding that the former wife was entitled to status as an heir-at-law of the husband upon his death because of an offer in the divorce complaint and its implied acceptance by inclusion in the final decree of divorce.

¶14. Here, the chancellor ruled to enforce all terms of the separate-maintenance order, noting on the record, as had the Texas trial judge in his decree, the contractual aspects of his judgment. Thus, we also find that William's written agreement, incorporated in the Texas judgment and specifically including the separate-maintenance order, constitutes a waiver of his right to contest the chancellor's continued jurisdiction over issues regarding William's support and maintenance obligations to Stella.

**CONCLUSION**

¶15. For the reasons set out above, we conclude that a separate-maintenance judgment of a Mississippi court that had acquired full jurisdiction over marital partners does not automatically become void upon entry of a valid divorce judgment in another state. We recognize, however, that entry of a divorce judgment under such circumstances is a material change in circumstances sufficient to allow consideration of modification of the separate-maintenance judgment. Such modification must, however, take place upon proper pleading and be based on sufficient evidence to justify modification. In this case, as the chancellor properly noted, William sought no such modification, nor did he present any evidence to justify modification. He rested his case solely on the assertion that the judgment in issue became totally void and of no legal effect upon the Texas divorce judgment, overlooking the fact that the Texas court had specifically deferred to the chancery court's continuing jurisdiction over issues of support and marital property. The chancery court therefore properly rejected William's argument that it lacked jurisdiction.

¶16. **THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, MAXWELL AND JAMES, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND WILSON, JJ.**

**IRVING, P.J., DISSENTING:**

¶17. The majority finds that the chancellor did not err in refusing to terminate William's

8

separate-maintenance obligations after William and Stella were divorced. Because an existing marriage is a prerequisite for sustainment of an award of separate maintenance, I dissent.

¶18. In August 2013, the District Court of El Paso County, Texas, awarded William and Stella a divorce. The record does not inform us if Stella requested alimony at that time, but it reveals that no alimony was awarded. The judgment of divorce contains two provisions that warrant analysis:

> The [c]ourt finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The [c]ourt approves the agreement of the parties as contained in this [f]inal [d]ecree of [d]ivorce.

> The [c]ourt finds that the parties entered into a [j]udgment for [s]eparate [m]aintenance on or about September 1, 2006[,] in the Chancery Court of Rankin County, Mississippi[,] in case number 57913 and attached as Exhibit A to this [d]ecree. It is not the intent or purpose of this decree, nor shall it be construed or interpreted to alter, change, limit, diminish, or cancel any provision of said judgment. This [d]ecree is being entered separate and apart from that judgment.

¶19. On November 13, 2013, a little over two months after the judgment of divorce, William filed a complaint in the Chancery Court of Rankin County, seeking to terminate the separate maintenance that the chancery court had awarded to Stella in September 2006. Stella answered William's complaint and filed a counterclaim, seeking to have William held in contempt for failing, since December 2013, to abide by the terms and conditions of the order for separate maintenance. Specifically, Stella contended that William had not provided

9

health insurance for her as required by the separate-maintenance order.

¶20. When the matter came on for hearing before the chancery court, the chancellor determined that William should not be held in contempt because he had attempted to acquire health insurance for Stella. However, the chancellor denied William's request for termination of his separate-maintenance obligations and dismissed his complaint. In doing so, the chancellor stated: "[T]his [c]ourt will fully enforce all terms of the [j]udgment for [s]eparate [m]aintenance entered in this cause and incorporated in the [f]inal [d]ecree of [d]ivorce entered in the [Texas court]."

¶21. Our law is well settled that an existing marriage is a prerequisite to an award of separate maintenance. *See Weiss v. Weiss*, 579 So. 2d 539, 541 (Miss. 1991). In *Weiss*,

> Barbara and Thomas Weiss were married on December 16, 1967, in Biloxi, Mississippi. They separated in 1986, and Thomas moved to Slidell, Louisiana. Barbara continued to reside in Mississippi. In November 1988[,] Thomas filed a suit for divorce in Louisiana. In December of that same year, Barbara filed a complaint for separate maintenance in Mississippi.

*Id*. In deciding that the chancery court's award of alimony was proper despite the fact that Barbara had filed only a complaint for separate maintenance, the *Weiss* court stated:

> Barbara's original complaint was for separate maintenance; and she did not formally amend her complaint. *Her claim for separate maintenance was no longer proper, however, as a divorce had been previously granted*. The lower court's judgment of alimony may still be affirmed if her action for separate maintenance could be *and* was properly converted to, and tried as, a claim for alimony.
>
> There is nothing inherent in the substance of a claim for separate maintenance to prevent parties from implicitly or tacitly amending the complaint at trial to become a claim for alimony.

10

*Id*. (emphasis added).

¶22.   The major distinction between our case and *Weiss* is that, here, unlike what occurred in *Weiss*, the parties did not try, by consent, the issue of alimony, nor did Stella convert her claim for separate maintenance into one for alimony. As stated, Stella sought to have William held in contempt for his failure to abide by the separate-maintenance order, even though the parties were divorced. I should note that Stella did not question the validity of the Texas District Court's judgment of divorce in the chancery court, and even if she had, she would not have prevailed on that issue, as it is not subject to collateral attack. Moreover, she agreed to both the form and substance of the Texas court's judgment.

¶23.   Based on these facts, it is clear to me that the majority errs in affirming the chancery court's judgment upholding the continuing validity of the separate-maintenance order despite the existence of the valid judgment of divorce by the Texas court. Also, it is clear to me that the chancellor, as well as the majority, misreads the Texas [c]ourt's judgment as incorporating the separate-maintenance order. Quite the contrary, the Texas court's judgment simply acknowledges the existence of the separate-maintenance order and specifically states: "It is not the purpose of this [judgment], nor shall it be construed or interpreted to alter, change, limit, diminish, or cancel any provisions of said judgment." Despite the plain and unambiguous wording in the Texas court's judgment, leaving the separate maintenance unaffected, the chancellor and the majority must either read the judgment as automatically converting the separate maintenance into alimony, or misinterpret

11

Mississippi law as automatically allowing separate maintenance in lieu of alimony if there is an outstanding order for separate maintenance at the time a judgment of divorce is granted. In my judgment, Mississippi law does not allow such. I acknowledge that Stella would have been acting within the parameters of our law if she had sought to convert, by the appropriate pleading, her separate-maintenance claim into one for alimony. Also, the parties could have voluntarily tried the issue of alimony even though no pleadings on the issue existed. However, in either case, Stella would have been required to prove that alimony was appropriate. That was not done, hence the error.

¶24. I should point out that the majority's reliance upon *Chapel v. Chapel,* 876 So. 2d 290 (Miss. 2004) is misplaced because *Chapel*, while factually similar to our case in some ways, is factually dissimilar in a crucial and material aspect: the absence of consent by William, or a request by Stella for the chancery court to decide the issue of alimony or to treat the existing separate maintenance as alimony. In *Chapel,* one of the issues was whether the Virginia judgment of divorce removed subject-matter jurisdiction from a Mississippi court that had previously granted separate maintenance, thereby precluding a subsequent modification of the order for separate maintenance. *Chapel*, 876 So. 2d at 293 (¶10). In order to put the issue in *Chapel* in factual context vis-a-vis the facts in our case, I quote extensively from the *Chapel* court's opinion in resolving the issue presented:

> However, given that neither party in the present case made formal objections
> to the chancellor's authority to modify the original separate[-]maintenance
> judgment after the Virginia divorce was granted, it is not necessary for the
> [c]ourt to reach the issue of whether a divorce decree, particularly a foreign

12

divorce decree, terminates a domestic court's order of separate maintenance.

. . . .

In the present case, the chancellor entered the original separate[-]maintenance judgment on May 31, 1996. Virginia entered the final divorce decree on April 25, 1997. The chancellor entered judgments modifying the original judgment on August 7, 1998[,] and January 9, 2001[,] at the petition of Grace and Michael. Similar to *Landrum* [*v. Landrum,* 498 So. 2d 1229 (Miss. 1986)], the chancellor modified the judgment at the request of the parties and subsequent to the entr[y] of the divorce. The entry of the divorce decree did not terminate the chancellor's authority to modify the existing judgment[,] which provided for support for Grace and the two children, possession of the marital home [,] and custody of the children. *Once petitioned by the parties, the divorce qualified as a material change in circumstances subsequent to the original judgment, which vested the chancellor with the authority to modify it.*

. . . .

Similar to the parties in *Weiss*, Grace and Michael manifested their consent to the chancellor's modification of the original judgment and division of the marital property on numerous occasions during the years covered in this appeal. There was no surprise or prejudice occasioned as a result of the judge's decision to grant the agreed request of the parties. *Although the parties' pleadings were for the contempt of the original judgment, the parties consented to the chancellor's authority to modify and decide issues not resolved by the Virginia divorce, including division of the marital property.*

Based on the [c]ourt's holdings in *Landrum* and *Weiss*, *we conclude that the chancellor had authority to modify the original separate-maintenance agreement subsequent to the Virginia divorce, based on a subsequent material and substantial change in circumstances. The consent of the parties gave the chancellor the authority and jurisdiction to adjudicate issues relating to division of the marital property, without requiring the parties to amend their pleadings.*

The foreign divorce decree did not terminate the Mississippi chancery court's jurisdiction over the matter, nor were the parties required to file a separate pleading for alimony or division of property once the parties consented to the chancellor's authority to rule on such matters. We affirm the chancellor's

13

> modification of the separate[-]maintenance judgment and denial of Grace's motion for relief from judgment.

*Chapel,* 876 So. 2d at 294-95 (¶¶11, 13, 18-20) (emphasis added).

¶25.    Clearly, the facts in *Chapel* are totally different from our facts, making the legal conclusions stated therein inapplicable to our case. Here, Stella's counterclaim placed only one issue before the chancery court: whether William was in contempt for his failure to abide by the order for separate maintenance. William's complaint also placed only one issue before the court: whether his obligations under the separate-maintenance order should be terminated because a material change in circumstances had occurred—the marriage between him and Stella had been dissolved since the date of the order for separate maintenance. The parties did not stipulate that the court could consider whether the separate maintenance should be continued as alimony and did not try that issue. Since Stella, in her counterclaim, did not ask that she be granted alimony or that the separate maintenance be converted to or treated as alimony, the issue of converting or treating Stella's separate maintenance as alimony was not before the chancery court. It necessarily follows that there was no basis for the chancellor to keep the order for separate maintenance in place after the judgment of divorce. Citing *Landrum,* 498 So. 2d at 1230, the majority states: "A divorce can be a material change in circumstances warranting modification of a prior separate maintenance order." In my view, a judgment of divorce is a material change in circumstances, for it cannot be legitimately argued that the dissolution of the marriage—the premier legal relationship between the parties upon which separate maintenance hangs—is not a material and substantial change.

14

¶26.    In William's complaint, he stated: "A material change in circumstances has occurred which warrants termination of the separate[-]maintenance judgment[,] to wit: The parties were divorced on August 28, 2013." When Stella was served with a copy of William's complaint, it became her obligation to counterclaim for alimony if she felt entitled to it. She did not, choosing instead to seek to have William held in contempt for failure to honor all of his obligations under the existing separate-maintenance agreement. She could have done both, but her failure to counterclaim for alimony did not preclude the chancery court from considering and deciding the issue presented by William. Indeed the chancery court was obligated to do so.

¶27.    I would reverse and render the judgment of the chancery court. In doing so, I offer no opinion as to whether Stella may still seek alimony by an appropriate pleading. I simply find that since she did not seek alimony at the time that William sought to have his separate-maintenance obligations terminated, the chancery court erred in not terminating William's separate-maintenance obligations because the undisputed evidence is that the parties were no longer married. The majority's suggestion that, notwithstanding Stella's failure to expressly petition for alimony, the chancellor could sua sponte re-characterize the separate maintenance as alimony is without legal footing.

¶28.    Therefore, for the reasons presented, I dissent.

**CARLTON AND WILSON, JJ., JOIN THIS OPINION.**