## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-IA-01811-SCT

*BRENDA BLOODGOOD*

*v.*

*NIKESHA LEATHERWOOD, APRIL GARCIA, INDIVIDUALLY AND AS PARENT AND NEXT FRIEND OF MONIQUE GARCIA, VINCENT BUCK AND AZYIA BUCK, MINORS; KENNETH ANDERSON; AND AMERICAN FAMILY INSURANCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2008 |
| TRIAL JUDGE: | HON. CHARLES R. BRETT |
| COURT FROM WHICH APPEALED: | LEE COUNTY |
| ATTORNEY FOR APPELLANT: | M. REED MARTZ |
| ATTORNEYS FOR APPELLEE: | BO ROLAND |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 01/21/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND PIERCE, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     Service via certified mail upon an out-of-state defendant was returned as "unclaimed/refused." Because the defendant was not properly served, we reverse and remand the case for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2.     On July 23, 2002, a motor vehicle collision occurred near Belden, Mississippi, between vehicles driven by Nikesha Leatherwood and Brenda Bloodgood, a Tennessee resident. Leatherwood and her passengers ("Leatherwood") originally filed suit against

Bloodgood on March 25, 2003, in the Lee County Circuit Court. The suit was dismissed without prejudice on February 15, 2005, for failure to serve Bloodgood with process. The instant suit was filed in the Lee County Court on June 17, 2005.

¶3. Leatherwood obtained a 120-day extension of time for service on October 11, 2005, and she made numerous unsuccessful attempts to serve Bloodgood personally. Leatherwood eventually attempted to serve Bloodgood via certified mail per Mississippi Rule of Civil Procedure 4(c)(5). The U.S. Postal Service attempted to deliver the summons and complaint on December 22, 2005; December 28, 2005; and January 6, 2006. The mailing was eventually returned to sender marked "Unclaimed/Refused." This is a new, singular designation used by the Postal Service rather than the prior practice of returning a letter as either "unclaimed" or "refused."

¶4. On July 14, 2006, Bloodgood, via special appearance, filed her answer and raised the issue of improper service with a request that the action against her be dismissed. Bloodgood alleges the statute of limitations for bringing the action expired on August 19, 2006. On October 6, 2006, Bloodgood filed a revised motion to dismiss, asking that the action against her be dismissed with prejudice since the statute of limitations had expired. Bloodgood claims that she never refused the certified mailing. There is no dispute that service was attempted at the correct residential address.

¶5. On October 16, 2008, the trial judge issued an order finding that Bloodgood was effectively served as of January 1, 2006. The order stated that "[t]he Court is unwilling to penalize the Plaintiffs because of the methods of operation of the United States Postal

2

Service, specifically that the Postal Service did not state whether the envelope was either refused or unclaimed." From that order, this appeal is taken.

## ISSUES RAISED

¶6. The ultimate issue in this appeal is whether the trial judge properly denied Bloodgood's motion to dismiss for insufficiency of process. Bloodgood raises the following issues:

I.   Whether Mississippi's Non-Resident Motorist Statute, Miss. Code Ann. § 13-3-63, was the exclusive method by which Leatherwood should have effected service on Bloodgood.

II.  Whether the certified mailing by Leatherwood, returned as "unclaimed/ refused," was insufficient to comply with the requirements of Mississippi Rule of Civil Procedure 4(c)(5).

III. If service is found to be improper, whether this action should be dismissed.

## STANDARD OF REVIEW

¶7. This Court reviews de novo a trial court's grant or denial of a motion to dismiss. *Fletcher v. Limeco Corp.*, 996 So. 2d 773, 776 (Miss. 2008) (citing *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 513 (Miss. 2005)).

## ANALYSIS

I.   **Whether Mississippi Code Section 13-3-63 provides the exclusive method by which Bloodgood should have been served.**

¶8. Bloodgood first argues that service upon her should have been accomplished through Mississippi's nonresident motorist statute, Mississippi Code Section 13-3-63, rather than Mississippi Rule of Civil Procedure 4(c)(5). Section 13-3-63 provides, in pertinent part:

3

> The acceptance by a nonresident of the rights and privileges conferred by the provisions of this section, as evidenced by his operating, either in person or by agent or employee, a motor vehicle upon any public street, road or highway of this state, or elsewhere in this state, or the operation by a nonresident of a motor vehicle on any public street, road or highway of this state, or elsewhere in this state, other than under this section, shall be deemed equivalent to an appointment by such nonresident of the Secretary of State of the State of Mississippi to be his true and lawful attorney, *upon whom* **may** *be served all lawful processes or summonses in any action or proceeding against him, growing out of any accident or collision in which said nonresident may be involved* while operating a motor vehicle on such street, road or highway, or elsewhere in this state, and said acceptance or operation shall be a signification of his agreement that any such process or summons against him which is so served shall be of the same legal force and validity as if served on him personally.

Miss. Code Ann. § 13-3-63 (Rev. 2002) (emphasis added).

¶9.     Although Bloodgood cites numerous cases in which this Court has endorsed Section 13-3-63 as an appropriate method by which nonresidents may be served, none of them supports her contention that it is the exclusive method, and one even contradicts this point. *See **Trailer Exp., Inc. v. Gammill***, 403 So. 2d 1292, 1293 (Miss. 1981) ("It is our opinion that appellee had her choice as to the manner of serving appellant.")  The plain language of the statute says that service "may" be served pursuant to its provisions.  Additionally, the Mississippi long-arm statute, Section 13-3-57, provides:

> Any nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state . . . shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 13-3-57 (Rev. 2002).  Mississippi Rule of Civil Procedure 4(c)(5) provides: "In addition to service by any other method provided by this rule, a summons may

be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail." Miss. R. Civ. P. 4(c)(5).

¶10.    Section 13-3-63 merely provides an alternative method to serve a particular class of out-of-state defendants.  Furthermore, even if the statute provided an exclusive method of service, it would conflict with Rule 4.  This Court is vested with the inherent power to promulgate procedural rules.  *Newall v. State*, 308 So. 2d 71, 76 (Miss. 1975).  Accordingly, this issue is without merit.

## II.    Whether Bloodgood was properly served pursuant to Rule 4(c)(5).

¶11.    Bloodgood argues that she was never properly served with process as required by Mississippi Rule of Civil Procedure 4(c)(5).  The rule provides:

> (5) Service by Certified Mail on Person Outside State. In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, *the envelope containing the summons and complaint shall be marked "restricted delivery."* Service by this method shall be deemed complete as of the date of delivery as *evidenced by the return receipt or by the returned envelope marked "Refused."*

Miss. R. Civ. P. 4(c)(5) (emphasis added).

¶12.    Bloodgood contends that the service of process on her was deficient because (1) the envelope was not marked as restricted delivery, and (2) the mailing was returned to sender with the new postal designation of "unclaimed/refused" rather than as either "unclaimed" or "refused."

## A. "Restricted Delivery"

¶13. Bloodgood first argues that Leatherwood did not comply with the rule because the envelope was not marked "restricted delivery." A "mark" is defined as a "symbol, impression, or feature on something, usu[ally] to identify it or distinguish it from something else." Black's Law Dictionary 808-09 (8th ed. 2005). In the instant case, the envelope had an attached return receipt containing the words "4. Restricted Delivery? (*Extra Fee*)" with a checked box beside it. The attached receipt plainly marked the mailing for restricted delivery as contemplated by Rule 4, and this issue is without merit.

## B. "Unclaimed/Refused"

¶14. Bloodgood next argues that service was not proper under Rule 4(c)(5) because the mailing was returned with the new postal designation "unclaimed/refused." This designation is problematic because it combines the previously distinct designations of "unclaimed" and "refused," which have different meaning and effect under our rules. *See **Jones v. Flowers***, 547 U.S. 220, 229-35, 126 S. Ct. 1708, 1716-719, 164 L. Ed. 2d 415 (2006); *see **Young v. Huron Smith Oil Co., Inc.***, 564 So. 2d 36, 37 (Miss. 1990).

¶15. A return envelope marked "refused," as required by Rule 4(c)(5), denotes that the Postal Service actually attempted delivery on the defendant, who refused to accept it. A returned envelope marked "unclaimed" simply means that the Postal Service was unsuccessful in delivering the mailing to the defendant, whether because delivery was attempted at the wrong address, the defendant simply was not home at the time the Postal Service attempted delivery, or some other reason.

6

¶16.    Leatherwood argues that, because the return envelope literally had the word "refused" on it, it should be treated as being in compliance with the rule.  In other words, she insists that we should treat "unclaimed/refused" as the equivalent of "refused." This argument fails. As stated above, "unclaimed" and "refused" have two entirely different meanings, and we have no way to know which applied in this case.  When drafting our rules, this Court included the requirement that, for service to be effective, an undelivered mailing must actually have been refused by the defendant, as evidenced by the returned envelope marked "refused."   A returned envelope marked "unclaimed" is insufficient to satisfy service requirements under Rule 4(c)(5).  Additionally, the United States Supreme Court has held that a certified mailing returned as "unclaimed" is insufficient to satisfy constitutional due process requirements for service of process.  *See Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) (holding that, after a mailed notice was returned unclaimed, a state was required by the Due Process Clause of the Fourteenth Amendment to take additional reasonable steps to notify the owner before the sale could proceed).

¶17.    The designation of "unclaimed/refused" renders impossible a determination whether the mailing was refused or unclaimed. Therefore,  the service of process upon Bloodgood failed to comply with Rule 4(c)(5) and consequently, the trial court erred by finding that Bloodgood was properly served.

### III.    Whether this Action Should be Dismissed.

¶18.    Bloodgood next argues that, since service was not effectuated within 120 days of filing the complaint, it should be dismissed.  Bloodgood argues that, because the statute of

7

limitations expired August 19, 2006, the dismissal should be with prejudice. This Court finds that dismissal is not warranted at this juncture in the proceedings.

¶19.    Mississippi Rule of Civil Procedure 4(h) provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of complaint, the action shall be dismissed unless the plaintiff can show good cause.[1]  The filing of a complaint tolls the applicable statute of limitations for 120 days, but if the plaintiff fails to serve process on the defendant within that 120-day period, and in the absence of an extension of time for service of process, the statute of limitations begins to run again automatically. *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (Miss. 2002).  A plaintiff who does not serve the defendant within the 120-day deadline must either refile the complaint before the statute of limitations expires or show good cause for failing to serve the defendant within the 120-day period; otherwise, dismissal is proper. *Id.*  "The rule therefore provides that the plaintiff will have an opportunity to show good cause after the 120 days period has elapsed." *Webster v. Webster*, 834 So. 2d 26, 29 (Miss. 2002).  The plaintiff has the burden of establishing good cause. *Holmes*, 815 So. 2d at 1185.

¶20.    Regarding what constitutes "good cause," this Court has remarked that:

---

[1]The full text of Rule 4(h) is as follows:

Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Miss. R. Civ. P. 4(h).

> [G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis.

*Id.* at 1186 (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 342 (3d ed. 2000)).

¶21. While the trial court erred by finding that Bloodgood was served properly, Leatherwood should now be afforded the opportunity to apply for additional time to serve process and to demonstrate whether the circumstances in this case constitute good cause for failing to serve the defendant.

¶22. This matter is remanded to the trial court for a determination as to whether Leatherwood can show good cause for her failure to serve Bloodgood properly. If the trial court determines that good cause existed for failure to serve Bloodgood within the 120-day period, Leatherwood should be granted an extension for service of process, during which she may properly effectuate service and proceed with the action.

## CONCLUSION

¶23. Service of process is not effected properly under Rule 4(c)(5) when the mailing is returned as "unclaimed/refused." Accordingly, the trial judge erred by finding that Bloodgood was served properly in this case. The judgment of the trial court is reversed, and this matter remanded to the trial court to determine whether the circumstances in this case constitute good cause for Leatherwood's failure to properly serve Bloodgood within the time period prescribed by Mississippi Rule of Civil Procedure 4(h).

9

¶24.   **REVERSED AND REMANDED**.

**CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, J.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶25.   I disagree with the majority's finding that service of process on Bloodgood failed to comply with Rule 4(c)(5), and therefore I dissent. I would find that service of process was sufficient under Rule 4(c)(5) for the following reasons: the certified mailing containing the summons and complaint was returned to the sender with the marking "Unclaimed Refused" (a marking including the word "Refused"); it is undisputed that the address at which the U.S. Postal Service attempted to deliver the mailing was the correct address; the Postal Service documented that it had attempted to deliver the mailing at that address on three separate occasions; the Postal Service documented that it had provided notice of each of those attempted deliveries to the addressee; and lastly, Bloodgood evidently was made aware of the summons and complaint, because she filed an answer. These facts, in aggregate, adequately support the trial judge's finding that Bloodgood was effectually served.

¶26.   The marking of "Unclaimed Refused" is ambiguous, but it is just as reasonable, if not more so, for a sender of mail to conclude that such a marking indicates that the mailing was refused as it is for a sender to conclude that the mailing was simply unclaimed. The Postal Service defines "Refused" as "[a]ddressee refused to accept mail or pay postage charges on it." United States Postal Service, Domestic Mail Manual (DMM), § 507, Exh. 1.4.1, http://pe.usps.com/text/dmm300/507.htm#wp1112866 (last accessed Jan. 8, 2010). The Postal Service defines "Unclaimed" as "[a]ddressee abandoned or failed to call for mail."

10

*Id.  See also* ***Jones v. Flowers***, 547 U.S. 220, 245, 126 S. Ct. 1708, 1725, 164 L. Ed. 2d 415 (2006) ("'Unclaimed' . . . may indicate that an intended recipient has simply failed or refused to claim mail.").  Based on those definitions, which are readily available to the public, it is just as rational, if not more so, to conclude that a mailing marked "Unclaimed Refused" was refused rather than simply unclaimed.[2]

¶27.    In addition, regardless of what a sender thinks the "Unclaimed Refused" marking indicates in terms of what actually happened when the Postal Service attempted delivery, the sender reasonably could conclude, as it did in the instant case, that the "Unclaimed Refused" marking fulfills Rule 4(c)(5)'s requirement that the returned mailing be marked "Refused."

¶28.    I agree with the majority that a mailing marked "Unclaimed" (and not "Unclaimed Refused") cannot be said to satisfy the requirement of Rule 4(c)(5) that a returned mailing be marked "Refused;" however, until the Postal Service clarifies the meaning of "Unclaimed Refused" or Rule 4(c)(5) is amended to clarify that such a marking is insufficient under the Rule, the "Unclaimed Refused" marking must be analyzed as the new, distinct term that it

---

[2] While use of the majority's definitions of "Refused" and "Unclaimed" would not affect my conclusions, it should be noted that the majority includes no citation for its definitions.

Furthermore, the two cases the majority cites as support for the assertion that "'unclaimed' and 'refused' . . . have different meaning and effect under our rules" do not necessarily support that statement.  The two cases – ***Jones v. Flowers***, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), and ***Young v. Huron Smith Oil Co.***, 564 So. 2d 36 (Miss. 1990) – neither mention the term "Refused" nor contrast the term "Refused" with the term "Unclaimed."

In addition, ***Jones v. Flowers*** did not unequivocally state, as the majority suggests, that a certified mailing returned as "unclaimed" is insufficient service of process to satisfy constitutional due process requirements.  Rather, as the majority more or less notes in its explanatory parenthetical to the ***Jones*** case, ***Jones*** held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." ***Jones***, 547 U.S. at 225.  In other words, the ***Jones*** court was ruling on the sufficiency of process in one specific situation, and it also noted that additional process was due *only if practicable*.

is. Whether it fulfills the requirement of Rule 4(c)(5) can be determined only through consideration of the circumstances in each specific case.

¶29. In the instant case, the "Unclaimed Refused" marking, *in conjunction with* the other relevant facts, supports a finding that Bloodgood was effectually served. As noted above, it is undisputed that the address at which the Postal Service attempted to deliver the mailing was the correct address; the Postal Service documented that it had attempted to deliver the mailing at that address on three separate occasions; the Postal Service documented that it had provided notice of each of those attempted deliveries to the addressee; and Bloodgood evidently was made aware of the summons and complaint, because she filed an answer. From these facts, despite Bloodgood's claims to the contrary, it is most logical to conclude that Bloodgood either outright refused the mailing or effectively refused it by failing to retrieve it from the post office after receiving notices that the post office was holding it for her.[3] Therefore, I would find that service of process was sufficient under Rule 4(c)(5).

¶30. Accordingly, I must dissent and would affirm the trial court's order finding that service upon Bloodgood was complete and effective on or about January 1, 2006.

**WALLER, C.J., AND KITCHENS, J., JOIN THIS OPINION.**

---

[3] The fact that Leatherwood made numerous unsuccessful attempts to serve Bloodgood personally is further evidence that Bloodgood was attempting to avoid acceptance of the summons and complaint.