# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00870-COA

**LISA D. GARNER PRITCHARD**                 **APPELLANT**

**v.**

**DONALD L. PRITCHARD**                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2018 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHARLES MARTIN HAUG |
| ATTORNEY FOR APPELLEE: | TIMOTHY C. HUDSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED, VACATED AND REMANDED - 08/27/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**C. WILSON, J., FOR THE COURT:**

¶1. Lisa Pritchard appeals the chancery court's order denying her motion to set aside judgment of divorce, entered on May 3, 2018; the order denying her motion to reconsider, entered on May 25, 2018; and, in whole, the final decree of divorce, entered on June 5, 2017. Lisa raises two issues on appeal: (1) whether the chancery court erred by finding it had jurisdiction over the parties and thereafter entering a judgment of divorce and property distribution order; and (2) whether the chancery court erred by denying her motion to set aside judgment of divorce. Because service of process failed to comply with the requirements of Rule 4 of the Mississippi Rules of Civil Procedure, we find that the chancery court lacked jurisdiction at the time it entered the final decree of divorce, rendering the

chancery court's divorce decree void. Thus, the chancery court erred by denying Lisa's motion to set aside judgment of divorce. Accordingly, we reverse the chancery court's order denying the motion to set aside, vacate the final decree of divorce and the accompanying distribution of marital assets, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Donald and Lisa Pritchard were married on March 15, 1997, in Montgomery County, Alabama. They lived together as husband and wife in Lowndes County, Mississippi, until Lisa relocated to Alabama in either 2011 or 2012. Donald remained in Mississippi.

¶3. On March 1, 2017, Donald filed a complaint for divorce with the Chancery Court of Lowndes County, Mississippi. In the complaint for divorce, Donald alleged he was entitled to a divorce on the grounds of adultery, habitual drug use, and desertion or, in the alternative, irreconcilable differences. He sent a copy of the complaint for divorce along with a Summons via certified mail to two different addresses he knew Lisa to use in the State of Alabama—her primary residence and her mother's residence. Neither copy of the complaint for divorce and summons was marked "restricted delivery," and the copy delivered to Lisa's primary residence was neither delivered nor refused. Instead, after three attempted deliveries on March 8, 2017; March 17, 2017; and March 27, 2017, the post office marked the copy addressed to Lisa's primary residence "Unclaimed" and returned it to the sender.

¶4. On April 14, 2017, Lisa's sister, Pamela Berthiaume, retrieved the copy delivered to Lisa at their mother's address. Berthiaume signed the return receipt, indicating that she was

2

Lisa's agent.[1]  Three days later, Donald filed the return receipt Berthiaume signed with the chancery court as proof of service that Lisa was served by certified mail on April 14, 2017. *See* M.R.C.P. 4(f).  The court clerk docketed Lisa's answer due date as May 14, 2017.  The April 17, 2017, proof of service by certified mail Donald filed is the only proof of service in the trial court record.

¶5.     Berthiaume delivered the mail to Lisa at her residence sometime between two days and two weeks after Berthiaume signed for it.  Due to a "series of debilitating illnesses" that rendered Lisa unable to read the contents of the mailing herself, Berthiaume opened the mail, read the contents to Lisa, and explained to Lisa that the papers were a proposal for an irreconcilable differences divorce which required her signature if she agreed.[2]  Lisa later testified that she was unaware of any summons being enclosed and denied that she was advised that she had to respond to the complaint within any specific time period to protect her rights.

¶6.     Lisa did not sign the papers or otherwise timely respond, and only Donald appeared in court for a hearing regarding his complaint for divorce.  After hearing the testimony and

---

[1] Lisa asserts that she has never lived at her mother's residence, and neither her mother nor Berthiaume were authorized—in writing or otherwise—to act as agent for Lisa. However, Lisa testified that she stayed with her mother for "a little while" when she was unable to take care of herself.  Further, when asked during the chancery court's hearing on her motion to set aside whether there was "documentation or anything that [Berthiaume was] authorized to sign for acceptance of any papers" on Lisa's behalf, Lisa testified, "She signs my medical records.  She takes care of me with my mail, medical records, medical—when I have to go, she takes care of all of that for me, my mail."  There is no written authorization from Lisa allowing Berthiaume to sign for Lisa's certified mail in the record.

[2] Berthiaume later testified that she remembered the papers included the adultery, habitual drug use, and desertion grounds alleged in Donald's complaint for divorce.

considering the evidence presented, the chancery court granted a divorce on the ground of desertion and entered its final decree on June 5, 2017.

¶7.     Lisa filed a motion to set aside judgment of divorce on June 13, 2017. In her motion, she alleged the chancery court lacked jurisdiction because she was never properly served with the complaint for divorce. She also requested the opportunity to answer and seek an equitable distribution of marital assets via a counterclaim for divorce.[3] Lisa filed an answer to Donald's complaint for divorce on June 16, 2017.

¶8.     On April 24, 2018, the chancery court held a hearing on Lisa's motion to set aside judgment of divorce, and on May 3, 2018, the chancery court entered an order denying Lisa's motion. The chancery court determined that Lisa was properly served by certified mail; Lisa had actual notice of the complaint for divorce and failed to answer or defend as required by law; and as a result, the court had jurisdiction to enter the final decree of divorce.

¶9.     Lisa filed a motion to reconsider on May 7, 2018, pursuant to Rule 59 of the Mississippi Rules of Civil Procedure. In this motion, Lisa contended that regardless of whether service of process was defective, equity demanded the chancery court consider the circumstances that precluded her from "comply[ing] with the technical requirements to protect her rights" and allow her to be heard on the equitable distribution of marital assets. Donald filed a response on May 10, 2018, and the chancery court entered an order denying Lisa's motion to reconsider on May 25, 2018.

¶10.    Lisa timely filed her notice of appeal on June 19, 2018.

---

[3] Lisa testified: "[I] wanted this divorce over with as much as [Donald] did. But it wasn't fair, what he was asking for."

STANDARD OF REVIEW

¶11.    We will not disturb a chancellor's findings of fact "unless the chancellor's decision is manifestly wrong or unsupported by substantial evidence." *Bougard v. Bougard*, 991 So. 2d 646, 648 (¶12) (Miss. Ct. App. 2008). But "[w]hen reviewing questions concerning jurisdiction, this Court employs a *de novo* review." *Sanghi v. Sanghi*, 759 So. 2d 1250, 1252 (¶7) (Miss. Ct. App. 2000). Sufficiency of process is a jurisdictional issue. *Clark v. Clark*, 43 So. 3d 496, 499 (¶9) (Miss. Ct. App. 2010).

DISCUSSION

¶12.    The controlling issue on appeal is whether Donald's attempted service by certified mail under Rule 4(c)(5) of the Mississippi Rules of Civil Procedure was sufficient to confer jurisdiction over Lisa in this divorce proceeding. If service of process was deficient, the chancery court lacked jurisdiction, and the final decree of divorce is void and must be set aside.

¶13.    In its order denying Lisa's motion to set aside, the chancery court found that (1) Lisa was properly served by certified mail; (2) Lisa had actual notice of the complaint for divorce and failed to answer or defend as required by law; and (3) as a result, the court had jurisdiction to enter the final decree of divorce. Because the record demonstrates that Lisa was not properly served by certified mail and because "actual notice" of the complaint for divorce was insufficient to perfect service of process and vest the chancery court with jurisdiction, the chancery court erred by denying Lisa's motion to set aside. Therefore, we reverse the chancery court's order denying the motion to set aside, vacate the final decree of

5

divorce, and remand for further proceedings.

## I.     Service of Process by Certified Mail

¶14.    The chancery court found that Lisa was properly served by certified mail.  Lisa

contends that she was never properly served with process as required by Rule 4(c)(5) of the

Mississippi Rules for Civil Procedure.  Rule 4(c)(5) provides:

> In addition to service by any other method provided by this rule, a summons
> may be served on a person outside this state by sending a copy of the summons
> and of the complaint *to the person to be served* by certified mail, return receipt
> requested.  Where the defendant is a natural person, *the envelope containing
> the summons and complaint shall be marked "restricted delivery."*  Service by
> this method shall be deemed complete as of the date of delivery as *evidenced
> by the return receipt or by the returned envelope marked "Refused."*

(Emphasis added).

¶15.    Lisa contends that service of process on her was deficient because (1) neither

envelope was marked "restricted delivery"; and (2) the mailing delivered to Lisa's residence

was returned to sender as "Unclaimed" rather than as "Refused."  We will address each of

these requirements of Rule 4(c)(5) in turn.

### A.     "Restricted Delivery"

¶16.    Rule 4(c)(5) requires that "[w]here the defendant is a natural person, the envelope

containing the summons and complaint *shall* be marked 'restricted delivery.'"  M.R.C.P.

4(c)(5) (emphasis added).  This designation is intended to ensure that direct delivery "to the

addressee or to the person authorized in writing as the addressee's agent" is achieved.  *See*

*Long v. Vitkauskas*, 228 So. 3d 302, 304-05 (¶8) (Miss. 2017) (incorporating United States

Postal Service guidance).  It is clear from a plain reading of the rule that in order for service

6

of process by certified mail on a nonresident to be proper, the envelope containing the summons and complaint *must* be marked "restricted delivery" and delivered to the addressee or one authorized in writing as the addressee's agent.

¶17. Here, it is undisputed that both envelopes Donald mailed lacked the required "restricted delivery" designation. It is also undisputed that the return receipts that accompanied each envelope also lacked the "Certified Mail Restricted Delivery" designation. And, as discussed *infra*, with regard to the copy signed for and retrieved by Berthiaume, the record contains no evidence indicating that Berthiaume was authorized, in writing, to act on Lisa's behalf as her agent.

¶18. Donald's attempted service of process by certified mail was thus defective. "It is the well-settled rule that service of process on a non[]resident defendant is jurisdictional requiring *strict compliance* with statutory procedures." *Worthy v. Trainor*, 11 So. 3d 1267, 1268 (¶ 4) (Miss. Ct. App. 2009) (emphasis added); *see also Kolikas v. Kolikas*, 821 So. 2d 874, 878 (¶ 16) (Miss. Ct. App. 2002) ("The rules on service of process are to be strictly construed. If they have not been complied with, the court is without jurisdiction unless the defendant appears of his own volition."). Thus, because service of process failed to strictly comply with Rule 4(c)(5), both attempts to serve Lisa by certified mail were defective.

### B. "Unclaimed/Refused"

¶19. Regarding the complaint and summons addressed to Lisa's residence, service was not proper under Rule 4(c)(5) because the mailing was returned to sender as "Unclaimed."

¶20. Rule 4(c)(5) provides that "[s]ervice by this method shall be deemed complete as of

7

the date of delivery as *evidenced by the return receipt or by the returned envelope marked 'Refused.'"* M.R.C.P. 4(c)(5) (emphasis added). The advisory committee's note to Rule 4 further adds that "[s]ervice of process is not effective under Rule 4(c)(5) if the mailing is returned marked 'unclaimed/refused', 'unclaimed' or 'undeliverable as addressed.'" M.R.C.P. 4 advisory committee's note; *see also Bloodgood v. Leatherwood*, 25 So. 3d 1047 (Miss. 2010) (finding service of process failed to comply with Rule 4(c)(5) where the return envelope was marked "unclaimed/refused").

¶21.    In *Bloodgood*, our supreme court highlighted the difference between the postal designations "Refused" and "Unclaimed." A return envelope marked "Refused," as required by Rule 4(c)(5), denotes that the Postal Service actually attempted delivery on the defendant who refused to accept it. *Bloodgood*, 25 So. 3d at 1050 (¶14). In contrast, a returned envelope marked "unclaimed" simply means that the Postal Service was unsuccessful in delivering the mailing to the defendant, whether because delivery was attempted at the wrong address, the defendant simply was not home at the time the Postal Service attempted delivery, or for some other reason. *Id*. at (¶15). "[F]or service to be effective, an undelivered mailing *must actually have been refused by the defendant*, as evidenced by the returned envelope marked 'refused.' A return envelope marked 'unclaimed' is insufficient to satisfy service requirements under Rule 4(c)(5)." *Id*. at (¶16) (emphasis added).

¶22.    Here, although the Postal Service attempted delivery on Lisa on three separate occasions, the record evidence fails to demonstrate that Lisa actually refused service. At best, there is evidence in the record that Lisa was aware she had mail at the Post Office but

that she did not retrieve the mail either because she "knew they were divorce papers"[4] or because her illness prevented her from retrieving it herself. Regardless, the envelope was returned to the sender as "Unclaimed," not "Refused." As such, the mailing was insufficient to satisfy service requirements under Rule 4(c)(5). *Bloodgood*, 25 So. 3d at 1052 (¶23).

## II. Service of Process by "Actual Notice"

¶23. The chancery court also found that it had jurisdiction to enter the final decree of divorce based on the court's finding that Lisa had "actual notice" of the complaint for divorce and yet "failed to answer as required by law." Lisa contends that her sister's eventual delivery of the complaint for divorce, which admittedly gave Lisa actual notice of the divorce proceeding, was nonetheless insufficient to cure defective service of process and confer jurisdiction over her. We agree.

¶24. Lisa received the documents that Donald sent in his second attempt to serve her by certified mail, via her mother's address, at some point in mid- to late-April 2017. Lisa's sister, Pamela Berthiaume, signed a receipt for the mail on April 14, 2017, as Lisa's "agent." On April 17, 2017, Donald filed a copy of the summons and the return receipt signed by Berthiaume as proof of service by certified mail. Based on the date Berthiaume signed the return receipt, the clerk docketed Lisa's answer due date as May 14, 2017. This docket entry is the only evidence of service of process in the record prior to the chancery court's entry of

---

[4] Lisa's son, Jeremiah Howard, testified that Lisa was aware she had mail at the Post Office, and that she told him she was not going to claim the mail because she "knew that they were divorce papers." However, Lisa testified that at the time, she was physically unable to drive herself and did not have the ability to get to the Post Office to claim her mail.

9

the final decree of divorce. Although both Donald and the chancery court proceeded on the assumption that Lisa had been validly served by certified mail on April 14, 2017, this second attempt at service via Rule 4(c)(5) was insufficient because it was not properly marked "restricted delivery," as discussed above. The mail was also claimed by Berthiaume, not Lisa, even though Berthiaume was not authorized by Lisa in writing to claim certified mail as Lisa's "agent." *See Long v. Vitkauskas*, 228 So. 3d at 304-05 (¶8).

¶25. The testimony adduced during the hearing on Lisa's motion to set aside indicated that after Berthiaume signed a receipt for Lisa's certified mail, Berthiaume eventually delivered the mail to Lisa, opened it for her, and read the contents to her. The chancery court relied on this testimony to overrule Lisa's motion to set aside, concluding that "shortly after this [second] summons was received, it was delivered to [Lisa], and she was well aware of it." But even if Lisa "was well aware" of Donald's divorce proceeding, actual notice does not cure defective process. *See, e.g.*, *Mosby v. Gandy*, 375 So. 2d 1024 (Miss. 1979). "Even if a defendant is aware of a suit, the failure to comply with rules for the service of process, coupled with the failure of the defendant voluntarily to appear, prevents a judgment from being entered against [her]." *Sanghi*, 759 So. 2d at 1257 (¶33) (reversing a finding of contempt due to defective service of process where the defendant, Dr. Sanghi, received notice of the date and time of the hearing and failed to appear on the date of the hearing).

¶26. Donald posits that even if service by certified mail was defective, Berthiaume effectuated personal service of process when she delivered the certified mail to Lisa sometime in mid- to late-April 2017. Under this theory, even though Donald chose to serve

process by certified mail pursuant to Rule 4(c)(5), Berthiaume unwittingly became a personal process server under Rule 4(c)(1) after she accepted and delivered the certified mail to Lisa, which cured any defect in service by certified mail.

¶27. This novel "hybrid" theory of service of process is effectively a revisionist attempt to shoehorn the chancery court's finding that "[Lisa] was well aware of [the complaint]"—i.e., actual notice—into the strictures of Rule 4, such that defective service could be salvaged. To accept this theory, we must also accept that personal service of process, pursuant to Rule 4(c)(1), occurred by happenstance, despite Donald's sole reliance on service by certified mail pursuant to Rule 4(c)(5). Donald never attempted personal service; he never contacted Berthiaume to request that she act as a process server consistent with Rule 4(c)(1). And there is no proof of service to substantiate a date on which Lisa was personally served (other than a vague two-week range in April 2017) to trigger a deadline for her responsive pleading.

¶28. Putting aside the fact that Donald attempted service by certified mail (not via a process server) Donald's "hybrid" service of process by an accidental process server would require a marked departure from both the plain requirements of Rule 4 and our precedent that "service of process on a non[]resident defendant is jurisdictional requiring strict compliance with statutory procedures." *Worthy*, 11 So. 3d at 1268 (¶4); *see also Kolikas*, 821 So. 2d at 878 (¶16).[5] If personal service is accomplished whenever anyone "not a party" and "not less

---

[5] The dissent posits that "[w]e are bound to apply the 'plain language' of [Rule 4(c)] rather than 'our own notions' of how the rule perhaps should read." *Post* ¶43 (citing *Poindexter v. S. United Fire Ins. Co.*, 838 So. 2d 964, 971 (¶30) (Miss. 2003)). Relying on a pair of Washington State cases, the dissent reasons that "there was sufficient evidence for the chancellor to find that Berthiaume personally delivered the summons and complaint to

than 18 years of age" simply forwards defectively-served process to its intended recipient, there is no limiting principle to prevent actual notice to correct defective service under any other provision of Rule 4. Stated differently, so long as the process is eventually personally handed to the proper recipient—as when an attorney provides a "courtesy copy" of process to her client—Donald's theory of service of process would suffice. But this is not consistent with the law. *See Sanghi*, 759 So. 2d at 1257 (¶33); *Mosby*, 375 So. 2d 1027-28. Because strict compliance was lacking here, service of process was defective, and the chancery court erred in finding otherwise.

### III. Lisa's Motion to Set Aside

¶29. Because Lisa was never properly served with process, it follows that the chancery court lacked jurisdiction when it entered the final decree of divorce. For this reason, we agree with Lisa's contention that the final decree of divorce is void and that the chancellor erred in refusing to set it aside pursuant to Mississippi Rule of Civil Procedure 60(b).

¶30. Although the grant or denial of a Rule 60(b) motion is generally within the discretion of the chancery court, "[i]f the judgment is void, the [chancery] court has no discretion. The

---

Lisa, and such personal service satisfies the plain language of Rule 4(c)(1)." *Post* ¶¶41-42, 44 (discussing *Scanlan v. Townsend*, 336 P.3d 1155 (Wash. 2014), and *Brown-Edwards v. Powell*, 182 P.3d 441 (Wash. Ct. App. 2008)). While we agree with the first principle, we disagree that Rule 4(c)(1) envisions that inadvertent delivery of process fulfills the requirements for personal service of process sufficient to confer jurisdiction. *Cf. Macchia v. Russo*, 496 N.E.2d 680, 681 (N.Y. Ct. App. 1986) (explaining that "delivery of a summons to the wrong person does not confer jurisdiction over defendant, even though the summons shortly thereafter comes into the possession of the party to be served"); *McDonald v. Ames Supply Co.*, 238 N.E.2d 726 (N.Y. Ct. App. 1968) (explaining that delivery of summons to receptionist in building in which corporation had an office did not confer jurisdiction even though receptionist delivered summons to the proper person).

12

court must set the void judgment aside." *Soriano v. Gillespie*, 857 So. 2d 64, 69-70 (¶22) (Miss. Ct. App. 2003). A judgment is deemed void if the court rendering it lacked jurisdiction. *Morrison v. Miss. Dep't of Human Servs.*, 863 So. 2d 948, 952 (¶13) (Miss. 2004). Specifically, a judgment is void "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Id*.

¶31. In *Kolikas*, we found the chancellor erred in failing to set aside a divorce decree pursuant to Rule 60(b) where the defendant was served by publication, but the process server did not strictly comply with Rule 4's requirements. *Kolikas*, 821 So. 2d at 879 (¶32). We observed that a defendant is "under no obligation to notice what is going on in a cause in court against him, unless the court has gotten jurisdiction of him in some manner recognized by law." *Id*. at 878 (¶17); *see also Clark*, 43 So. 3d at 502.

¶32. Just as in *Kolikas*, here we find the chancellor did not acquire personal jurisdiction over Lisa because service in compliance with Rule 4 was not achieved. Because the chancellor lacked personal jurisdiction over Lisa, the divorce is void. When a divorce is invalidated, "all matters decided as a result of the divorce decree are null and void and should be brought in another hearing." *Peterson v. Peterson*, 797 So. 2d 876, 879 (¶12) (Miss. 2001). Accordingly, the equitable distribution of marital assets is also null and void, and a new hearing must be held.

CONCLUSION

¶33. Because Lisa was improperly served with process, the chancery court lacked personal

jurisdiction over Lisa at the time it entered its divorce decree. For this reason, the chancery court's final decree of divorce is void, as is the court's accompanying distribution of marital assets. We therefore reverse the Lowndes County Chancery Court's order denying the motion to set aside, vacate the final decree of divorce entered by the chancery court, and remand this cause for further proceedings consistent with this opinion.

¶34. **REVERSED, VACATED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD, J. J. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE, J.; TINDELL, J., JOINS IN PART.**

**TINDELL, J., CONCURRING IN RESULT ONLY:**

¶35. I agree with the dissent's conclusion that Mississippi Rule of Civil Procedure 4(c)(1) allows for "secondhand" delivery of a summons and complaint to effectuate service of process since the Rule's plain language requires nothing more than personal delivery by a nonparty adult. In this case, however, Donald attempted service upon Lisa via certified mail pursuant to Mississippi Rule of Civil Procedure 4(c)(5). And as the majority correctly determines, service of process by certified mail was defective in this case because Donald failed to strictly comply with the requirements of Rule 4(c)(5). While certain situations may arise where a person unwittingly becomes a process server, I fail to see how defective service pursuant to Rule 4(c)(5) can somehow result in effective service pursuant to Rule 4(c)(1). I therefore concur in result with the majority and join in part with the dissent.

**McDONALD, J., JOINS THIS OPINION IN PART.**

14

**J. WILSON, P.J., DISSENTING:**

¶36. I agree with the majority that Donald's attempts to serve Lisa by certified mail were ineffective because the mailing was not marked "restricted delivery" and was returned as "unclaimed." *See* M.R.C.P. 4(c)(5); *Long v. Vitkauskas*, 228 So. 3d 302, 304 (¶6) (Miss. 2017) ("Mississippi Rule of Civil Procedure 4(c)(5) requires a mailing of process to an out-of-state, natural defendant be marked 'restricted delivery.'"); *Bloodgood v. Leatherwood*, 25 So. 3d 1047, 1051 (¶16) (Miss. 2010) ("A returned envelope marked 'unclaimed' is insufficient to satisfy service requirements under Rule 4(c)(5).").

¶37. However, the chancery court did not err by denying Lisa's motion to set aside the divorce decree because there was sufficient evidence for the court to find that Lisa was *personally served* with the summons and complaint. A "sheriff or process server" may accomplish personal service on a competent adult "by delivering a copy of the summons and of the complaint to [her] personally." M.R.C.P. 4(d)(1)(A). A "process server" may be "any person who is not a party and is not less than 18 years of age." M.R.C.P. 4(c)(1).

¶38. Here, Donald mailed a copy of the summons and complaint by certified mail to Lisa at her mother's address. Lisa did not accept the mailing. However, Lisa's sister (Berthiaume) signed for it and then personally delivered the complaint to Lisa. Berthiaume testified that she even read the complaint to Lisa.[6] Thus, Berthiaume "personally" served the

---

[6] At the hearing on Lisa's motion to set aside the divorce decree, Berthiaume testified, in response to a direct question from the chancellor, that the document that she delivered to Lisa was Donald's complaint for a divorce. In his bench ruling at the conclusion of the hearing, the chancellor found that Berthiaume had delivered the summons and complaint to Lisa. *See Smith v. Church Mut. Ins.*, 254 So. 3d 57, 62 (¶11) ("As to issues of service of

15

complaint consistent with the plain language and requirements of Rule 4(c)(1).

¶39.   The majority opinion suggests that personal service was not effective because Donald never asked Berthiaume "to act as a process server consistent with Rule 4(c)(1)" or because "there is no proof of service to substantiate a date on which Lisa was personally served." *Ante* at ¶27.  The majority then states personal service was ineffective because there was not "strict compliance" with "the plain requirements of Rule 4."  *Ante* at ¶28.[7]  With respect, I disagree.

¶40.   The plain language of Rule 4(c)(1) requires nothing more than personal delivery of the summons and complaint by a nonparty adult.  As the chancellor found, that happened in this case.  Rule 4(c)(1) does not require that the "process server" agree or even intend to act as such.  In addition, Rule 4(f) specifically provides that "[f]ailure to make proof of service

process, this Court reviews the trial court's findings for an abuse of discretion."). Berthiaume later signed an affidavit in which she claimed that she was "confus[ed]" when she testified in court.  In her affidavit, Berthiaume asserted that the document that she delivered and read to Lisa was actually a proposal for an irreconcilable differences divorce, not a complaint.  Lisa submitted Berthiaume's affidavit in support of her motion to reconsider the denial of her motion to set aside the divorce decree.  However, Lisa never produced the alleged proposal for an irreconcilable differences divorce.  The chancellor denied Lisa's motion to reconsider.

[7] The majority goes on to assert that the manner of personal service in this case was "not consistent with the law."  *Ante* at ¶28.  For this assertion, the majority cites only *Mosby v. Gandy*, 375 So. 2d 1024, 1027-28 (Miss. 1979), and *Sanghi v. Sanghi*, 759 So. 2d 1250, 1257 (¶33) (Miss. Ct. App. 2000).  *Mosby*, a pre-Rules case, simply states that a "defendant's knowledge of the existence of an action" is not a substitute for service of process.  *Mosby*, 375 So. 2d at 1028-28.  Similarly, *Sanghi* states "that jurisdiction is not obtained by a defendant's informally becoming aware that a suit has been filed against him." *Sanghi*, 759 So. 2d at 1257 (¶33).  Here, Lisa was not just "informally . . . aware" that Donald had filed a complaint for divorce.  Her own sister personally served her with the complaint and read it to her as well.

16

does *not* affect the validity of the service." M.R.C.P. 4(f) (emphasis added). Because Donald did not file proof of personal service, he was not entitled to an evidentiary *presumption* of valid service. *See Collins v. Westbrook*, 184 So. 3d 922, 929 (¶18) (Miss. 2016) (explaining that a properly executed proof of service raises a rebuttable presumption that service occurred). However, based on Berthiaume's own testimony, the chancellor found that personal service had in fact occurred. Thus, the lack of a properly executed and filed proof of personal service is unimportant.

¶41. Our courts have not addressed this issue previously, but the Washington Supreme Court held that similar "secondhand" service constituted valid personal service under that state's substantively identical rules of procedure. *See Scanlan v. Townsend*, 336 P.3d 1155, 1160-62 (¶¶22-34) (Wash. 2014). In that case, "a process server delivered a copy of the summons and complaint to [the defendant's father] at his home. But [the defendant (Townsend)] did not live at her father's home. Townsend's father later handed the summons and complaint directly to Townsend . . . ." *Id.* at 1156 (¶1). Townsend denied that such "secondhand" service was effective. However, the Washington Supreme Court rejected her argument, reasoning that "[n]othing in the plain language of [Washington Civil Rule] 4(c) precludes Townsend's father, who is over 18 years old, is competent to be a witness, and is not a party, from having authority to serve Townsend." *Id.* at 1161 (¶26).

¶42. In *Scanlan*, the Washington Supreme Court followed a prior Washington Court of Appeals decision in a case that involved personal service by the defendant's neighbor. *See id.* at 1161-62 (¶¶31-34) (discussing *Brown-Edwards v. Powell*, 182 P.3d 441 (Wash. Ct.

App. 2008)).  In *Brown-Edwards*, a process server mistakenly delivered the summons and complaint to the defendant's neighbor, but the neighbor then personally delivered the documents to the defendant.  *Scanlan*, 336 P.3d at 1161 (¶31).  The neighbor's delivery was deemed valid personal service because the neighbor "certainly [met] the criteria for a process server." *Id.* at (¶32) (quoting *Brown-Edwards*, 182 P.3d at 442 (¶6)).  As the court explained,

> Nothing in the rule requires that a process server have a contractual obligation to serve process.  Nor is there any requirement of proof of intent to serve process.  And we find nothing that would prohibit a person who comes into possession of a summons and complaint by defective service from being a competent process server.  The rule prohibits only a party to the action from serving process.

*Id.* (quoting *Brown-Edwards*, 182 P.3d at 442 (¶6)).  In short, a person can effect valid personal service even if she does so unwittingly.

¶43.    The reasoning of the Washington courts is persuasive.  Berthiaume came into possession of the summons and complaint as a result of a defective attempt at service by certified mail, but she then personally served Lisa in a manner consistent with the plain language and requirements of Rule 4(c)(1).  We are bound to apply the "plain language" of the rule rather than "our own notions" of how the rule perhaps should read.  *Poindexter v. S. United Fire Ins. Co.*, 838 So. 2d 964, 971 (¶30) (Miss. 2003) (plurality op.) (applying Mississippi Rule of Civil Procedure 15(a)); *accord id.* at 972 (¶35) (Waller, J., concurring).  On the facts of this case, valid personal service occurred under Rule 4(c).

¶44.    In summary, there was sufficient evidence for the chancellor to find that Berthiaume personally delivered the summons and complaint to Lisa, and such personal service satisfies

18

the plain language of Rule 4(c)(1).[8]  I would affirm the decision of the chancery court denying Lisa's motion to set aside the divorce decree.  Therefore, I respectfully dissent.

**LAWRENCE, J., JOINS THIS OPINION.  TINDELL, J., JOINS THIS OPINION IN PART.**

---

[8] Lisa did not receive notice of the hearing on Donald's complaint.  However, both this Court and the Supreme Court have held that there is no obligation to give notice of such a hearing to a party who fails to enter an appearance or answer a complaint for divorce. *Lindsey v. Lindsey*, 818 So. 2d 1191, 1194 (¶11) (Miss. 2002); *Stinson v. Stinson*, 736 So. 2d 1259, 1261-62 (¶¶6-10) (Miss. Ct. App. 1999); *Carlisle v. Carlisle*, 11 So. 3d 142, 145 (¶10) (Miss. Ct. App. 2009).